**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**"IN ADMIRALTY"**

**CASE NO.:**

LADYB LLC,

      Plaintiff,

v.

SEASIDE MARINE, LLC,

      Defendants.

_____/

## COMPLAINT

Plaintiff, LADYB LLC ("Plaintiff"), by and through undersigned counsels, hereby sues

Defendant, SEASIDE MARINE, LLC ("Defendant Seaside Marine"), stating:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1333(1), and Plaintiff

brings this action pursuant to 46 U.S.C. § 31343(c)(2). This Court has jurisdiction over this civil

action in admiralty to declare that the vessel, the M/Y *Tatou* ("Vessel"), is not subject to

Defendant's claimed maritime lien; that it is not subject to Defendant's Notice of Claim of Lien;

and/or that Plaintiff shall be entitled to post a bond to release the lien and have it removed from

the Vessel's Abstract of Title. A federal question subject to this Court's admiralty jurisdiction is

presented because this Complaint is filed pursuant to 46 U.S.C. § 31343(c)(2).

2.      This is an admiralty or maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure.

3.      Venue is appropriate in this District pursuant to 46 U.S.C. § 31343(c)(2) because the maritime lien claimant resides in Wellington, Florida; because the Notice of Claim of Lien appears to have been recorded in this District; and because Defendant Seaside Marine conducts business within this District, where its principal place of business is also located.

## PARTIES

4.      Plaintiff, LADYB, LLC, was at all relevant times a limited liability company with a registered address of 1 Sutton Place South #7B, New York, NY 10022. Plaintiff is the registered owner of the Vessel, a 2016, sixty-foot, United-States-flagged, recreational vessel of approximately sixty-one (61) gross tons, whose hailing port is Palm Beach, Florida; whose Official Number is 1293934; and whose IMO number is VSC58803I617.

5.      Defendant Seaside Marine was at all relevant times an active Florida limited liability company with its principal place of business located in this District. Defendant Seaside Marine's principal address is 9314 Forest Hill Boulevard, Suite 835, Wellington, FL 33411. Its registered agent name and address are Nicolis A. Ferrese, 11000 Town Circle, Unit 202, Wellington, FL 33414. Defendant Seaside Marine is also located at 10820 Town Ter. Wellington, FL 33414.

6.      Defendant Seaside Marine alleges in their Notice of Claim of Lien ("Notice") to have an address of 11000 Town Circle, Apt. 202, Wellington, FL 33414. **Exhibit 1**.

## FACTUAL ALLEGATIONS

7.      In early 2023, the Parties entered into a service agreement ("Agreement") whereby Defendant was to perform service work on Plaintiff's Vessel in exchange for Plaintiff paying $130 per hour for the service. **Exhibit 2**. Although the services began earlier, the Agreement was not

executed by Plaintiff's representative until June 8, 2023. **Exhibit 2**. Defendant did not execute the Agreement. **Exhibit 2**.

8.       Defendant misleadingly induced Plaintiff into unnecessarily purchasing and installing four (4) engine turbos onto the Vessel that were not needed, all of which was purportedly part of the Agreement, including the service work for installing same.

9.       Defendant significantly delayed the start of their work on the Vessel, prompting Plaintiff to send repeated follow-up communications to Defendant inquiring as to when the service was to be completed and whether it was going to be timely completed before the Vessel's scheduled May 2023 departure.

10.      After Defendant performed their engine work on the Vessel, the Vessel's engines broke down outside of Charleston, South Carolina while transiting North.

11.      Defendant traveled to Charleston in a stated attempt to repair the mechanical failure. Before doing so, Defendant pressured Plaintiff into signing a June 8, 2023 "Travel Agreement" whereby Defendant noted that "additional work is needed by cause of faulty parts or outdated pre-existing parts, which have led to an exhaust leak (or other)" while unilaterally requiring that "[c]ustomer will be charged travel time to and from the job site as well as any overnight rates needed to complete the job." **Exhibit 3**.

12.      Needing a solution to have the Vessel fixed from Defendant's faulty work on the Vessel, and needing the repairs to be completed quickly to complete the transit North, Plaintiff was in effect coerced into signing the "Travel Agreement." **Exhibit 3**. The "Travel Agreement" was improperly dated, presented, and executed the same date as the Agreement even though the work under the Agreement purportedly commenced many weeks earlier. **Exhibit 3**.

13.     The Vessel's engines turned out to be in poor condition, they were not fully operable, and they were unsafe, all of which was evident after Defendant's "service" to the Vessel's engines prior to her departure North. Defendant's faulty, negligent work performance caused the Vessel's breakdown.

14.     Plaintiff inquired of Defendant whether Defendant's mechanic who did the work was a "Volvo Penta"-certified technician certified to do the specific service work contracted for the Vessel's engines. Defendant, in turn, stated that they were not entirely sure if they were and provided an "Volvo Penta" certificate that expired just before Defendant commenced its work on the Vessel. **Exhibit 4**.

15.     To obtain an independent assessment of the situation, Plaintiff employed Michael Dunn of Import Marine Diesel ("Dunn"), an independent third party. Dunn confirmed that the work performed on the Vessel prior to its departure from South Florida was faulty and made the Vessel unsafe to operate until fully repaired.

16.     Plaintiff, in turn, incurred significant damages in the form of exorbitant costs that were incurred to have Dunn travel to the Vessel from New York to inspect the Vessel, that then included repair costs and additional costs to further assess the damage done due to Defendant's faulty work performance on the Vessel before her departure.

17.     Although Plaintiff paid Defendant for services that were adequately rendered, Defendant alleged that an additional outstanding balance continued to exist that was owed to Defendant, even though it specifically pertained to the defective, negligent work done to the Vessel that resulted in its subsequent breakdown, a subsequent breakdown that resulted in direct and consequential damages to Plaintiff through the aforesaid costs it had to incur as a result.

18.     Plaintiff made a settlement offer to Defendant regarding the amount Defendant claimed they are owed. The offer was communicated to Defendant and their personal counsel. Defendant adamantly rejected Plaintiff's reasonable and fair settlement offer.

19.     Defendant made a Notice of Claim of Lien ("Notice") (**Exhibit 1**), in July 2023, claiming a maritime lien on the Vessel for $31,511.60. Defendant claims in their Notice that the lien was established on January 3, 2023. Plaintiff first learned of the Notice on or about July 28, 2023, when Defendant attached it as an exhibit to a Demand Letter Defendant sent to Plaintiff through previous counsel of theirs. **Exhibit 5**, "Exhibit "E.""

20.     Despite the faulty, negligent work performance, amounting to a material breach of the Agreement, and which has caused the aforesaid direct and consequential damages to Plaintiff, Defendant nonetheless claims that the principal balance owed for their service "work" has increased because, they claim, the outstanding balance continues to be charged interest. As of July 2024, the amount Defendant alleges is owed has ballooned to $46,880.76, an amount that purportedly continues to increase subject to the interest rate Defendant claims applies.

21.     Plaintiff incurred significant damages, both direct and consequential, through the aforesaid costs that had to be incurred to have Dunn independently assess the Vessel's condition and to then have the Vessel's damages repaired. The Vessel's Abstract of Title reflects the recordation of Defendant's lien. **Exhibit 6**.

## COUNT I – DECLARATORY RELIEF UNDER 46 U.S.C. § 31343(c)(2)

22.     Plaintiff re-adopts and re-alleges Paragraphs 1 – 21 as if fully incorporated herein.

23.     46 U.S.C. § 31343 allows a party claiming a lien on a vessel documented with the United States Coast Guard to record with the Secretary of Homeland Security ("Secretary") a notice of that party's lien claim on a vessel.

24.     Pursuant to § 31343(a), the party claiming the lien must state the nature of the lien claimed, the date the lien was established, the amount of the lien, and the name and address of the person claiming the lien. The claim of lien must also be signed and acknowledged.

25.     Pursuant to § 31343(b), the person filing the claim is required to submit a notice of declaration confirming that information provided to the Secretary is true and correct to the best of the knowledge, information, and belief of the person who signed it, and that a copy of the notice has been sent to (1) the vessel's owner; (2) each person that recorded an unexpired notice of claim of an undischarged lien on the vessel; and (3) the mortgagee of each mortgage filed or recorded that is an undischarged mortgage on the vessel.

26.     Pursuant to § 31343(b)(2), if a person filing a notice is not an individual, then the notice must be signed by the president, member, partner, trustee, or other individual authorized to execute the declaration on behalf of the person.

27.     Pursuant to § 31343(c)(2), Plaintiff seeks a declaration from this Court that (1) Defendant's lien claim is invalid in whole or substantial part, and/or (2) that Defendant's Notice is defective and/or invalid.

28.     As to the validity of the lien claim, Plaintiff denies the amount Defendant claims is owed under the Agreement. As explained above, Defendant breached the Agreement by negligently failing to provide sufficient, competent work service to the Vessel to meet its service needs as contracted for under the Agreement. This, in turn, resulted in significant direct and consequential damages to Plaintiff as alleged above, all while the Vessel's operators were exposed to danger while transiting North as the Vessel broke down due to the faulty engine service. As a result, any further contractual obligation to pay Defendant for their claimed outstanding balance

pertaining to their claimed "services" under the Agreement was extinguished by virtue of Defendant's initial breach of the Agreement.

29.     Assuming arguendo that that the amounts claimed to be owed were in fact owed, the asserted lien is nonetheless defective and/or invalid because the Notice declares that what is represented in it is "true and correct" when it in fact is not because it is based on an unsupportable claim under the facts.

30.     Defendant's lien claim and their corresponding Notice are false, defective, and/or invalid, and the recordation of the lien will continue to cause Plaintiff damages and material injury by impairing Plaintiff's ability to sell the Vessel free and clear of liens and by preventing Plaintiff from being able to operate the Vessel in United States waters. Plaintiff will also continue to suffer direct and consequential damages in the form of the aforesaid costs that were incurred by Plaintiff due to Defendant's breach and actions.

31.     For the foregoing reasons, Plaintiff requests that the Court enter a declaratory judgment ordering that Defendant's lien claim be deemed invalid and that Defendant's Notice shall be voided.

32.     Plaintiff also respectfully requests that, in the alternative, that Plaintiff shall be provided an opportunity to post a bond in the amount of the lien to fully secure the claimed debt, thereby allowing for the lien to be discharged and allowing for the Vessel's title to be free and clear from the lien. Plaintiff is prepared to post bond for the lien's release and respectfully requests an Order authorizing Plaintiff to do so.

33.     Pursuant to § 31343(c)(2), Plaintiff further requests that the Court award Plaintiff its reasonable attorneys' fees and costs incurred in seeking this relief.

**WHEREFORE**, Plaintiff respectfully requests the following:

a)	That the Cout declare that Defendant's claimed maritime lien be deemed invalid, defective, and unsupportable for the reason stated herein, and further, that Defendant's Notice shall be discharged from the Vessel's records, including from her Abstract of Title;

b)	That the Court alternatively issue an Order authorizing Plaintiff to post a bond in the amount of the claimed lien to secure the debt. Plaintiff further respectfully requests that, after the bond has been posted, that an Order be issued requiring the removal of the lien from the Vessel's records, including from her Abstract of Title, thereby allowing the Vessel to be free and clear from the subject lien;

(c)	That the Court award Plaintiff its reasonable attorneys' fees and costs associated with making this application; and

(d)	That this Court grant to Plaintiff all other relief deemed to be just and proper.

Dated: September 17, 2024

Respectfully submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Plaintiff*
255 Aragon Avenue, Third Floor
Coral Gables, FL  33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: michael@moore-and-co.com
Email: gpla@moore-and-co.com

*s/ Michael T. Moore*
Michael T. Moore, Esq.
Florida Bar No. 207845
Gabriel A. Pla, Esq.
Florida Bar No. 1027804